## THE STARR.

(District Court, W. D. Washington, S. D. December 22, 1913.)

No. 1.375.

ADMIRALTY (§ 21*)—ACTION FOR WRONGFUL DEATH—ADMIRALTY JURISDICTION.
  A state statute, giving a right of action for wrongful death to the next of kin of the deceased, extends to a case where the cause of action arose on board a domestic vessel of the state on the high seas, if not within the jurisdiction of any other sovereignty, and an action thereon may be maintained in a court of admiralty, but the admiralty will not create a lien and entertain a suit in rem against the vessel where no lien is given by the statute.

  [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 218–220; Dec. Dig. § 21.*]

In Admiralty. Suit by Olaf Hanson and Anna Hanson, husband and wife, against the steamship Starr; the San Juan Fishing & Packing Company, claimant. On exceptions to libel. Exceptions sustained.

Otis Johnson, of Tacoma, Wash., for libelants.

Hudson, Holt & Harmon, of Tacoma, Wash., for claimant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CUSHMAN, District Judge. This matter is before the court upon claimant's exceptions to the libel. The libel is one in rem to recover for the death of libelants' son, alleged to have been caused, upon the high seas, through negligence, in that the vessel's equipment was defective and that she was insufficiently manned.

The deceased was second mate, at the time of his death, of the respondent steamship, a domestic vessel in the halibut fisheries, hailing from the Port of Seattle. It is alleged that deceased was wifeless and childless and, at the time of his death, was the sole support of libelants. It is further alleged that they are, and were at the time of such death, citizens of the United States and residents of the state of Washington. Nothing is disclosed as to the citizenship and residence of deceased.

The Washington statute provides:

"When the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death. If the deceased leave no widow or issue, then his parents, sisters or minor brothers who may be dependent upon him for support and who are resident within the United States at the time of his death, may maintain said action. * * * In every such action the jury may give such damages, as under all circumstances of the case may to them seem just." Section 183, Rem. & Bal. Code; tit. 81–15,. Pierce's Code, 1912.

The general rule is:

"Where the statute of a state causes a survival to the next of kin of the right of action for damages for death wrongfully caused, such statute can have no application to a case where the death was caused outside the jurisdiction of such state and on the high seas. However, by the weight of modern authority, the state laws follow the domestic vessel upon the high seas until she comes within another jurisdiction, and therefore an action will lie, under a statute of that state, for a death caused by negligence on board a vessel whose home port is in that state, even though upon the high seas, without the jurisdiction of any other sovereignty. * * *" 13 Cyc. 316b.

The Supreme Court of the United States seems to recognize the same rule. The Hamilton, 207 U. S. 398, at pages 404, 405, and 406, 28 Sup. Ct. 133, 52 L. Ed. 264; La Bourgogne, 210 U. S. 95, at pages 138 and 139, 28 Sup. Ct. 664, 52 L. Ed. 973. In both of these cases the proceeding was one for limitation of liability. Proceedings of this nature are to limit the individual liability of the owner of the vessel;. therefore, superseding a cause in personam.

In the Hamilton Case, the court says:

"We pass to the other branch of the first question—whether the state law, being valid, will be applied in the admiralty. Being valid, it created an obligation—a personal liability of the owner of the Hamilton to the claimants. Slator v. Mexican National R. R. Co., 194 U. S. 120, 126 [24 Sup. Ct. 581, 48 L. Ed. 900]. This, of course, the admiralty would not disregard, but would respect the right when brought before it in any legitimate way. Ex parte McNiel, 13 Wall. 236, 243 [20 L. Ed. 624]. It might not give a proceeding in rem, since the statute does not purport to create a lien. It might give a proceeding in personam. The Corsair, 145 U. S. 335, 347 [12 Sup. Ct. 949, 36 L. Ed. 727]. If it gave the latter, the result would not be, as suggested, to create different laws for different districts. The liability would be recognized in all." 207 U. S. pages 405 and 406, 28 Sup. Ct. 135, 52 L. Ed. 264.

In construing the effect of liens created by state laws upon domestic vessels, where the cause is maritime, the decisions are not altogether harmonious. In general the admiralty will adopt and enforce liens so provided, as an incident to the cause itself, of which, being maritime, it has jurisdiction.

"Article 3, § 2, of the federal Constitution, provides that the federal judicial power shall extend inter alia 'to all cases of admiralty and maritime jurisdiction.' The first Congress which assembled after the Constitution went into effect passed the famous Judiciary Act of September 24, 1789. Chapter 20, § 9, of this act, vested the federal District Courts with cognizance 'of all civil cases of admiralty and maritime jurisdiction; saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it. * * * And such jurisdiction shall be exclusive.' Under the influence of these provisions, the courts have held that the effect of a local statute is merely to add the remedy in rem, or lien to a maritime cause of action, which lien, being maritime, is exclusively enforceable as such in the federal District Courts." 26 Cyc. 770b.

No case has been called to the court's attention where a cause of action is created by the state law, though it fall within the general domain of actions classed as "torts" that admiralty would give its lien to such cause. The admiralty has jurisdiction of such a suit, primarily, because of the place where it arose. The subject-matter of the cause is created by the state law, and, if there be a lien, it, too, should come from such law. In suits founded on contracts, where the state law gives a lien, the greater, the cause of action, may draw to it the less, the incidental lien, but the admiralty will not create a lien for a cause of action created by the state statute. The admiralty jurisdiction generally is exercised to maintain, as far as practicable, uniform laws, where shipping on the seas is concerned.

The foregoing decisions recognize that uniformity of laws within the state is of more importance than absolute uniformity on the seas, and where, alone, citizens of a state and a domestic vessel thereof are concerned, those laws of the state to which both owe allegiance will be recognized and enforced on the ocean, as tending to greater uniformity, simplicity, and certainty.

Where such a cause of action is created by the state and no lien is so created, for the admiralty to give a lien would not make more uniform and certain the laws, but the opposite. It would be creating a lien where there was no lien either on land or sea. The state law gives a right of action against a person in such a case, but neither it nor the admiralty gives a right of action against the thing—the alleged offending vessel.

For the foregoing reason, and in view of the plainly expressed doubt of the Supreme Court, above quoted, the exceptions must be sustained. The Dauntless, 129 Fed. 715, 64 C. C. A. 243; The Albert Dumois, 177 U. S. 240, 20 Sup. Ct. 595, 44 L. Ed. 751; The Jane Gray (D. C.) 95 Fed. 693; The Willamette (D. C.) 59 Fed. 797; The Oregon (D. C.) 45 Fed. 62; The General Foy (D. C.) 175 Fed. 590.